UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:07CV-00067-JHM

GREGORY ADAM SCOTT WALKER                                              PLAINTIFF
BY AND THROUGH HIS COURT APPOINTED CURATOR,
KENTUCKY GUARDIANSHIP ADMINISTRATORS, LLC

VS.

UNITED HEALTHCARE OF HARDIN, INC.
D/B/A LINCOLN TRAIL BEHAVIORAL HEALTH SYSTEM
AND LINCOLN TRAIL HOSPITAL                                             DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on various motions in limine by Plaintiff, Gregory Adam Scott Walker, [DN 61, DN 64, DN 65] and by Defendant, United Healthcare of Hardin, Inc., [DN 62, DN 63]. Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

This action arises out of an injury to the Plaintiff, Gregory Walker, while he was a resident at Lincoln Trail Behavioral Health System (hereinafter "Lincoln Trail") in December of 2004. Lincoln Trail Behavioral Health System accepts adolescent and adult patients with mental health issues. Plaintiff was admitted to the facility from foster care. Plaintiff was restrained on a number of occasions during his stay at the facility. During one of the restraints, the Plaintiff's neck was broken. The parties dispute the circumstances surrounding Plaintiff's injury. Additionally, Plaintiff contends that for three days following the injury, he was denied necessary medical treatment by Lincoln Trail employees despite his complaints of pain and tingling. Plaintiff filed suit against Defendant asserting claims of negligence/medical malpractice, battery, and false imprisonment. Plaintiff seeks both compensatory and punitive damages.

## II. MOTION IN LIMINE TO EXCLUDE THE EXPERT OPINION OF DR. WARREN BILKEY [DN 62]

Defendant moves to exclude the testimony of Dr. Warren Bilkey, Plaintiff's medical expert from trial on the grounds that his testimony and opinions are cumulative of the expected testimony of Dr. George Raque, Jr., one of Plaintiff's treating physicians. Defendant maintains that Dr. Bilkey's testimony in this matter should be limited to avoid delay, confusion to the jury, cumulative testimony, and needless bolstering of the testimony of Plaintiff's treating physician.

It is within the power of the court to exclude testimony that is repetitious and cumulative of testimony already offered at trial. Tran v. Toyota Motor Corp., 420 F.3d 1310, 1315 (11th Cir. 2005) (noting that part of trial court's broad authority over trial management is the power to exclude cumulative testimony); Bowman v. Corrections Corp. of America, 350 F.3d 537, 547 (6th Cir. 2003). Specifically, like other testimony, expert testimony may be excluded under Rule 403 if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

A review of the record indicates that Dr. Bilkey's testimony is not duplicative of Dr. Raque's expected testimony. The record reflects that Dr. George Raque is one of Plaintiff's attending and treating physicians during his hospitalization at the University of Louisville Hospital in December of 2004 and early 2005. The Defendant did not provide the Court with Dr. Raque's deposition. Plaintiff represents that Dr. Raque will testify about the nature, severity, and cause of Plaintiff's injuries and about his treatment of Plaintiff in December of 2004 and in the period immediately following. In contrast, the record reflects that Dr. Bilkey performed an Independent Medical Examination of Plaintiff in October of 2007, almost three years after Plaintiff's original surgery.

2

Based on a physical examination of Plaintiff, Dr. Bilkey offers opinions on Plaintiff's injury as of October of 2007, his diagnosis and prognosis, his activity restriction recommendations, and his impairment rating under the American Medical Association Guidelines. Further, Plaintiff's vocational expert Sharon Lane relied in part on Dr. Bilkey's impairment rating and restrictions in reaching her conclusions.

While Dr. Bilkey opines about the nature and cause of Plaintiff's injury based in part upon the medical records and opinions of Dr. Raque, reliance by an expert on the opinions, observations, or diagnosis of a treating physician to render his own opinions regarding a plaintiff's current medical condition and degree of impairment is permissible. In fact, the Advisory Committee Notes for Federal Rule of Evidence 703 recognize that experts may rely upon the opinions of other experts: "Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including . . . reports and opinions from nurses, technicians and other doctors . . . ." Advisory Committee's Notes on Fed. R. Evid. 703; see also 4 Weinstein & Berger, Weinstein's Federal Evidence § 703.04[3] ("The number of sources on which experts in various fields of expertise might reasonably rely to obtain information for the formation of opinions and inferences is virtually infinite. A few of those that the courts have considered with regularity are the following ... opinions of other experts[.]") (footnote omitted). Further, such reliance does not render the retained medical expert's testimony cumulative.

Accordingly, the Court finds the proposed testimonies of Dr. Bilkey and Dr. Raque are not cumulative, and Defendant's motion to exclude Dr. Bilkey's testimony is denied.

### III. MOTION IN LIMINE TO EXCLUDE THE EXPERT OPINION OF SHARON LANE [DN 63]

The Defendant seeks to exclude the testimony and opinions of Sharon Lane, Plaintiff's

vocational rehabilitation expert, on grounds that her opinions do not satisfy the standards of <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993) and/or Fed. R. Evid. 702. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert testimony is both reliable and relevant. <u>Mike's Train House, Inc. v. Lionel, L.L.C.</u>, 472 F.3d 398, 407 (6th Cir. 2006) (citing <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999)). In determining whether certain testimony is reliable, the focus of the Court "must be solely on principles and methodology, not on the conclusions that they generate." <u>Daubert</u>, 509 U.S. at 595. In <u>Daubert</u>, the Supreme Court identified a non-exhaustive list of factors that may assist the Court in assessing the reliability of a proposed expert's opinion including (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." <u>Id.</u> at 592-94. This gatekeeping role is not limited only to expert testimony based upon scientific knowledge, but, instead, extends to "all 'scientific,' 'technical,' or 'other specialized' matters within" the scope of Rule 702. <u>Kumho Tire</u>, 526 U.S. at 147-48.

Defendant argues that Lane's opinions should be excluded because she is not qualified to render opinions regarding future wage loss as she lacks the formal education necessary to render such opinions; her opinions lack that degree of reliability and scientific validity required under <u>Daubert</u>; and her conclusions were reached by utilizing a flawed methodology. Defendant also

4

complains that Lane knew that Plaintiff had been convicted of a felony, but did not inquire into the nature or number of the felonies; that Lane conducted a telephonic interview with the Plaintiff instead of an in-person interview; and that Lane did not administer any academic or aptitude tests to Plaintiff.

Having reviewed Lane's proffered testimony on Plaintiff's vocational disability and loss of earnings, the Court concludes that it satisfies the standard of Fed. R. Evid. 702. First, the Defendant has offered no case law or evidence that a vocational rehabilitation expert may not properly render an opinion regarding future lost wages. See e.g., Speicher v. Union Pacific R.R., 2009 WL 279063, *2 (W.D. Wash. Feb. 5, 2009)(court found no authority requiring a vocational rehabilitation expert offering testimony on economic loss to have a degree in economics). The record reflects that while Lane is not an economist, she is qualified to testify as a vocational specialist who has knowledge and training in the areas of calculating annual earning capacity and lost wages. In addition to her extensive training and experience in vocational rehabilitation and assessment, Lane testified that she has participated in several courses in occupational wage loss analysis. (Lane Deposition at 105-106.) Lane does not hold herself out as an economist; she did not compute fringe benefits, cost of living increases, seniority increases, or merit increases. Instead, she utilized her training in occupational wage loss analysis and determined Plaintiff's loss of future earnings based upon his impairment.

Similarly, Defendant has offered no evidence or authority that Lane's methodology is flawed or unreliable. Lane sufficiently articulated her method and reasoning underlying her opinions on Plaintiff's vocational impairment and loss of earnings. The methodology Lane employed in her report to calculate future lost earnings is generally accepted in the field of vocational assessment.

5

In fact, Lane has testified in numerous cases as a vocational expert, including recently in this Court in a Federal Tort Claims Act case. Defendant's disagreement with the manner of Lane's interview with Plaintiff, her consideration or lack of consideration of his criminal history, and her decision not to administer any independent academic or aptitude testing are matters that can be adequately addressed through cross-examination.

Accordingly, Defendant's motion in limine to exclude the expert opinion of Sharon Lane Brown is denied.

### IV. MOTION IN LIMINE TO EXCLUDE REFERENCE TO GUARDIAN [DN 62]

On September 3, 2009, the Jefferson District Court appointed Kentucky Guardianship Administrators as curator to oversee and manage Gregory Walker's estate pursuant to the provisions of KRS § 387.290(1), which provides for the appointment of a curator for a convict. On December 1, 2009, the Magistrate Judge granted the Plaintiff's Motion to Amend the Complaint to substitute his court appointed curator as party plaintiff.

Defendant has now filed a motion in limine seeking to exclude any reference to the curator at trial. Defendant maintains that Plaintiff's counsel indicated in a telephonic conference that he thought a jury would be more inclined to give money to Plaintiff if he had a guardian to take care of his finances. Thus, Defendant contends that any reference to a curator being appointed or suggestion that someone else will be assisting Plaintiff with his finances is completely irrelevant and prejudicial. Defendant argues that since Plaintiff has been released from custody on parole, there is no longer a need for a curator for Plaintiff. In response, Plaintiff argues that the Kentucky Guardianship Administrators is the real party in interest and should be permitted to participate in the trial of this matter. Plaintiff maintains that his need for a curator is a matter within the exclusive

province of the Jefferson District Court and one that does not turn on whether he was granted parole in June of 2010.

After considering the parties' arguments, the motion by Defendant to exclude any reference to the curator is **granted**. The Jefferson District Court ordered the appointment of Kentucky Guardian Administrators as curator for Walker pursuant to the provisions of KRS §387.290(1), which provides for the appointment of a curator for a convict. Because Mr. Walker was paroled in June of 2010, KRS §387.290(1) no longer authorizes Kentucky Guardian Administrators to act as curator for Walker. Accordingly, as of this date, the Kentucky Guardian Administrators should have resigned as curator and issued a full and complete accounting to Walker. See KRS §387.290(3)(The curator "shall account with the convict when he is discharged from the penitentiary."). Accordingly, the Court excludes any reference to the curator at the trial of this matter, including any argument that another person will be assisting Walker with his finances. Gregory Walker should be referred to as the Plaintiff at trial. Having prohibited Plaintiff from arguing that the curator will be assisting Walker with his finances, the Defendant is likewise prohibited from asking any questions or making any arguments that would suggest that the Plaintiff will squander any monetary damages awarded by the jury.

### V. MOTION IN LIMINE TO EXCLUDE MENTION OF PLAINTIFF'S POST CLAIM CONVICTIONS AND INCARCERATION [DN 61]

Gregory Walker has been convicted of seven felony convictions since his injury in December of 2004, including three burglary offenses, receiving stolen property, forgery, and criminal possession of a forged instrument. (Sharon Lane Deposition at 36-37.) Plaintiff moves to exclude evidence of his post-claim convictions and/or post-claim incarceration at the trial. Plaintiff argues that they are irrelevant pursuant to Fed. R. Evid. 401 because they offer no probative evidence

concerning whether the Defendant was negligent or committed a tortuous act in December of 2004. Plaintiff represents that none of his offenses evidence any violent or threatening propensities. Additionally, Plaintiff maintains that his post-claim convictions are likewise not relevant to the issue of his claim for future lost wages. Plaintiff contends that the value of his future lost wage claim was set before his criminal case was filed; that his vocational expert testified that she factored his convictions into her analysis; and that Defendant's failure to identify any rebuttal vocational expert precludes it from arguing that Plaintiff's future lost wages damages were caused in part by the criminal record. Finally, Plaintiff argues that even if the convictions were somehow relevant, admission of such evidence would unfairly prejudice the Plaintiff by misleading the jury into diminishing the value and merit of his claim. Fed. R. Evid. 403.

Defendant disagrees arguing that Plaintiff's status as a convicted felon is certainly admissible. First, Defendant maintains that the felony convictions are relevant to Plaintiff's lost wage claim. Plaintiff's vocational expert, Sharon Lane, testified that Plaintiff has lost wages in excess of $600,000 as a result of the injury sustained by Plaintiff while at the Lincoln Trail Behavioral Health Center. Defendant questioned Lane about the potential impact of felony convictions on employment opportunities. Lane indicated that felony convictions would impact an individual's employability and testified that she utilized his incarceration in the calculations of his potential wage loss. When questioned further, Lane indicated that she was aware that he was a convicted felon, but did not know the number of felony convictions or the type of convictions. Defendant argues that it should be permitted to question Lane about her lack of knowledge regarding Plaintiff's felony convictions and the potential impact of these convictions on her expert opinion regarding his lost wage claim. Second, Defendant argues that a number of the felony convictions

8

such as criminal possession of a forged instrument and forgery directly related to Plaintiff's veracity. Third, Defendant contends that Walker's location and his incarceration throughout the years is admissible because Plaintiff has placed his physical health at issue. According to Defendant, Plaintiff asserts that he could not afford health care and treatment and had no insurance that would cover such treatment; however, Plaintiff has been incarcerated and would have been provided free medical care.[1]

After reviewing the parties arguments, the Court finds that Plaintiff's post-claim convictions are relevant to his post-injury employability and his future earning calculation. See, e.g., Martin v. JLG Industries, Inc., 2007 WL 3202739, *2 (M.D. Fla. Oct. 29, 2007); Estate of Pierson v. City of Los Angeles, 2006 WL 5112596, *1 (C.D. Cal. March 6, 2006)("felony convictions also may have an impact on future earning capacity"). In fact, Sharon Lane considered Walker's criminal history when calculating his future lost wages. Therefore, defense counsel's questioning of Plaintiff's vocational expert, Sharon Lane, about the potential impact of the felony convictions on Plaintiff's employment opportunities and on his future earning calculation is proper. Additionally, the Court finds that the probative value of this evidence is not outweighed by its prejudicial effect. However, defense counsel should refrain from questioning Lane regarding the impact of the possible classification of Plaintiff as a persistent felony offender or the possibility of future felony convictions on Plaintiff's future lost wage claim or his employability. For these reasons, Plaintiff's motion is therefore **denied**.

### VI. MOTION IN LIMINE TO EXCLUDE CONFIDENTIAL "ACTS COMPLAINT/INCIDENT INVESTIGATION REPORT" PREPARED BY A REPRESENTATIVE FROM THE OFFICE OF INSPECTOR GENERAL [DN 64]

---

[1]In reply, Plaintiff represents that he will not make an issue of this at trial.

Connie Williams of the Office of Inspector General, Division of Health Care Facilities and Services, investigated Plaintiff's allegations of abuse and neglect by Lincoln Trail and concluded that the investigation failed to substantiate abuse or neglect.

Plaintiff seeks to exclude the investigation of Plaintiff's injury by the Office of Inspector General and to exclude the "ACTS Complaint/Incident Investigation Report" prepared by the Office of the Inspector General. Plaintiff maintains the use or reference to the OIG report is improper because: (1) it is irrelevant, (2) its probative value is outweighed by the danger of unfair prejudice, (3) it contains double and triple hearsay that does not fit within any recognized hearsay exception, and (4) the preparer of the OIG report is not subject to subpoena without express approval of the CMS Regional Administrator and therefore authentication of the report and cross-examination of the preparer would prove difficult if not impossible.

Defendant disagrees. Defendant argues that the investigation and the OIG report is relevant because it was commented on by both liability experts in this case and has "a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." (Defendant Response at 2.) Defendant further argues that the probative value of the evidence is not outweighed by the danger of unfair prejudice. Defendant contends that this report is a business record kept in the ordinary course of business and is not hearsay because it "is not cumulative and is not being offered to prove the truth of the matter asserted." (Id.) According to Defendant, the OIG report does not consist of double and triple hearsay statements "and the Court can make its own judgment as to whether certain statements contained within the report are admissible." (Id.)

After reviewing the parties' arguments, the Court excludes evidence related to the

investigation of Plaintiff's injury by the Office of Inspector General and excludes the OIG report that resulted from that investigation. The Federal Rules of Evidence prohibit the admission of evidence which is not relevant. Fed. R. Evid. 402. Evidence is generally admissible if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401; Multimatic, Inc. v. Faurecia Interior Systems USA, Inc., 2009 WL 4927957, *8 (6th Cir. Dec. 22, 2009). Defendant has failed to articulate any persuasive rationale for admitting this document. Whether or not the OIG Inspector found the allegations against the Defendant for failure to provide necessary care and services to Walker substantiated or unsubstantiated is of no consequence to whether Defendant violated the standard of care at issue in the medical negligence claim. Defendant fails to show how the OIG report relates to any elements of the medical negligence claim. In fact, Defendant's liability expert, Dr. Andrew Cooley, testified that the OIG report does not address whether a facility violated a standard of care from a medical standpoint. Furthermore, the OIG report is almost devoid of any factual findings and instead contains only witness statement summaries. These witnesses will be called to testify at trial. The Court finds that there is no probative value in the OIG Investigator's conclusory statements regarding the same evidence that will be considered by the jury. The investigation and the report generated from it are simply not relevant to this action.

Furthermore, even if the report had some remote relevance, its probative value is outweighed by the risk of unfair prejudice. Evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Here, a jury could potentially attach undue weight to this type of agency determination by viewing it improperly as a finding by the OIG that Lincoln Trail did not violate

11

its standard of care in its treatment of Plaintiff. See, e.g., Beverly v. Meva Formwork Systems, Inc., 2010 WL 1904460, *2 (E.D. Ky. May 11, 2010)(excluding legal conclusions of OSHA Report). Thus, the motion in limine by Plaintiff is **granted**.

### VII. MOTION IN LIMINE BY PLAINTIFF TO EXCLUDE REFERENCE TO CERTAIN MATTERS [DN 65]

Plaintiff moves to exclude twenty-two matters from consideration in this case and prohibit defense counsel from mentioning these matters before the jury.

1. The motion by Plaintiff to exclude any evidence of collateral source benefits is **granted**. Defendant represents that it has no objection to this motion in limine.

2. The motion by Plaintiff to exclude any reference, suggestion, or introduction of any evidence attacking the American tort system or Plaintiff's lawyers in general during the trial of this matter is **granted**. Defendant represents that it has no objection to this motion in limine.

3. The motion by Plaintiff to exclude statements that money will not undo the injury and the damage Plaintiff has suffered is **granted**. Defendant represents that it does not intend to introduce such evidence.

4. The motion by Plaintiff to exclude any reference that the Defendant is sorry or regrets the occurrence in question is **denied**. Plaintiff maintains that such statements constitute improper argument and are an unfair appeal to the jury sympathy toward Defendant resulting in a verdict based on improper considerations. Defendant asserts that it is completely proper for the entity itself or its employees to testify regarding their feelings about the incident. Defendant contends that Walker will testify about his feeling as well and such statements are not an invitation to the jury to disregard its legal duty. "A casual or occasional expression of regret at a tragic event or outcome is a basic human response and is not likely to divert a jury from its fact-finding duty based on actual

evidence presented during the course of a trial." Brown v. Crown Equipment Corp., 445 F. Supp. 2d 59, 71 (D. Me. 2006). Accordingly, the motion is denied.

5. The motion by Plaintiff to exclude any reference or suggestion that any recovery by Plaintiff either would or would not be subject to federal or state income tax or any other form of taxation is **granted**. Defendant represents that it does not intend to introduce such evidence.

6. The motion by Plaintiff to prohibit Defendant, its counsel, witnesses and representatives to not insinuate, interrogate, testify or make any statement related to the time or circumstance under which the Kentucky Guardianship Administrator and Greg Walker hired litigation counsel is **granted**. Plaintiff argues that it is not relevant and is prejudicial. Defendant asserts that the timing of how Plaintiff hired litigation counsel and the circumstances surrounding the appointment of a curator are completely admissible and relevant to the issues at hand. Defendant maintains that there is no attorney-client privilege as it relates to the retention of counsel and the date on which Plaintiff consulted an attorney is not a protected conversation.

The Defendant has not offered any argument regarding why the timing and circumstance of Plaintiff's retention of counsel is relevant to the trial of this matter. Additionally, the Court has excluded any reference to the curator at the trial; therefore, any evidence related to the circumstances surrounding the appointment of the curator is not relevant. Therefore, the motion by Plaintiff is granted.

7. The motion by Plaintiff to prohibit any reference or suggestion by Defendant that Plaintiff has not called to testify any witness equally available to both parties in this case is **granted**. It is impermissible to draw any inference from a party's failure to call witnesses that were equally available to both sides. United States v. Virgen-Moreno, 265 F.3d 276, 291 (6th Cir. 2001); see also

Elam v. Menzies, 594 F.3d 463, 469 (6th Cir. 2010). Accordingly, counsel shall not comment on a party's failure to call any witness subject to call by either party.

8. The motion by Plaintiff to exclude any reference to undisclosed documents, evidence, or videotapes that have been undisclosed is **granted**. Defendant represents that it does not intend offer such evidence.

9. The motion by Plaintiff to exclude any reference to the effect of a claim, suit, or judgment upon the insurance rates, premiums, or charges is **granted**. Defendant represents that it does not intend to make such an argument.

10. The motion by Plaintiff to exclude any reference or suggestion that damage awards may drive up the price of products, put manufacturers out of business, or cause jobs to be lost is **granted**. Defendant represents that it does not intend to discuss the effect of any recovery on the industry.

11. The motion by Plaintiff to exclude an reference or suggestion that no notice of the claim was given the Defendant until the suit was filed in this case is **granted.** Defendant represents that it does not intend to discuss its notice of the suit.

12. The motion by Plaintiff to exclude any reference of suggestion by the Defendant that the jury must extend special efforts to be fair and impartial to Defendant is **granted**. Defendant represents that it does not intend to assert that any special efforts are required from the jury.

13. The motion by Plaintiff to exclude any reference or suggestion that Plaintiff was given the name of a physician by her attorney or that her attorney assisted in scheduling an appointment is **denied.** Defendant can certainly inquire about the fact that Mr. Walker was referred to Dr. Bilkey for an Independent Medical Examination. Furthermore, Defendant may inquire whether Walker

has discussed this matter with other experts at the insistence of counsel.

14. The motion by Plaintiff to exclude the Golden rule argument and/or all arguments or testimony that members of the jury should put themselves in the place or shoes of Defendant is **granted**. Defendant represents that it does not intend to make this argument.

15. The motion by Plaintiff to exclude any arguments or suggestions as to what would have been the testimony of any witness not called is **granted**. Defendant represents that it has no intention of discussing unavailable witnesses or their testimony.

16. The motion by Plaintiff to exclude any claim, argument, or statement that any prior or subsequent claims and injuries of Plaintiff are related to the injuries now at issue, unless such contention is first established by a qualified medical expert and supporting medical records is **denied**. Specifically, Plaintiff seeks to prohibit any reference that Walker caused his own injury by banging his head on the wall or floor. According to Plaintiff, no medical expert establishes that Walker caused his own injury. In response, Defendant "asserts that it is perfectly and absolutely permissible to discuss the actions of the Defendant including his head banging which is documented in his medical chart at the facility." (Response at 3.)

A plaintiff in a negligence action bears the burden of establishing causation. "In contrast, defendants are not required to 'disprove' causation. Instead, they must only produce 'credible evidence which tends to discredit or rebut the plaintiff's evidence' so as to 'convince the trier of fact that the alleged negligence was not the legal cause of the injury.'" Hudson v. CSX Transp., Inc., 2009 WL 4406069, *4 n.3 (Ky. App. Dec. 4, 2009)(quoting Sakler v. Anesthesiology Associates,, 50 S.W.3d 210, 214 (Ky. App. 2001)(quoting Wilder v. Eberhart, 977 F.2d 673, 676 (1st Cir.1992)). Although Lincoln Trail would be required to provide a medical expert if it had the burden of

establishing the cause of the injury, no such burden exists here. Lincoln Trail cannot be prevented from introducing the Plaintiff's conduct at the facility, including Plaintiff's banging of his head on the wall or floor. The medical records from the facility document this conduct. Further, Defendant can not be prevented from cross-examining Plaintiff's witnesses regarding other possible medical causes of Plaintiff's injury. See Jones v. Union Pacific R. Co., 2009 WL 4610330, *1 (E.D. Ark. Dec. 2, 2009); Sakler,, 50 S.W.3d at 214. Accordingly, Plaintiff's motion in limine to exclude arguments and/or evidence concerning other causes of his injury is denied.

17. The motion by Plaintiff to exclude any evidence concerning offers to compromise or settle the claim is **granted**. Defendant represents that it does not intend to introduce such evidence.

18. The motion by Plaintiff to exclude any evidence or argument that the jury should reduce future earnings to account for taxes is **granted**. Defendant represents that it does not intend to introduce such evidence.

19. The motion by Plaintiff to exclude any evidence or argument that the jury should reduce future earnings for personal consumption is **granted**. Defendant represents that it does not intend to introduce such evidence.

20. The motion by Plaintiff to exclude any evidence concerning alleged injuries to Defendant's employees sustained as a result of Greg Walker is **denied**. Plaintiff argues that evidence regarding such injuries are irrelevant. To the extent they are relevant, Plaintiff contends that the Court should exclude it because the probative value is substantially outweighed by undue prejudice. Fed. R. Evid. 403. The Court finds that the injuries to Defendant's employees are relevant to the negligence and intentional tort claims. The record reflects that three staff members were injured by Plaintiff prior to or during the restraints in question. Defendant has maintained

throughout this litigation that the Plaintiff's behavior and the resulting injuries to the staff were the cause of the restraints in question. Certainly, evidence of these injuries are admissible to show whether the response and care used by the Lincoln Trail staff was reasonable under the circumstances. The Court agrees with the Defendant that to exclude any reference to these injuries would be to exclude the jury the opportunity to hear the evidence which they need to determine whether the Defendant was in fact negligent in this case. Accordingly, the motion to exclude evidence of these injuries is denied.

21. The motion by Plaintiff to exclude evidence concerning Plaintiff's alleged conduct before his admission to Lincoln Trail in December of 2004 is **reserved**.

Plaintiff asks this Court to exclude evidence related to his conduct prior to his admission at the Lincoln Trail Behavioral Health System, including that Walker broke out a window at school, was shackled and transported to the Defendant's facility by a police officer or security guard, and that he used foul language and became unruly before his time of admission. Plaintiff argues that such evidence is not relevant to the issue of whether or not the Defendant violated the standard of care in treating Plaintiff. Additionally, Plaintiff argues that such evidence would also constitute inadmissible prior bad acts and character attacks. Plaintiff contends that Defendant's portrayal of Walker as an out of control adolescent is an attempt to prejudice the jury against him and to justify its conduct. In response, Defendant argues that Plaintiff was an out of control adolescent which is documented in his records. Defendant contends that it is "reasonable to discuss the Plaintiff's actions and activities in providing the jury with the evidence necessary at the time of the incident in question." (Defendant's Response at 4.)

The question in this case is whether Lincoln Trail's care of Walker fell below the standard

17

of care required of a reasonable and prudent behavioral health center in the same or similar circumstances. The staff's restraints of Plaintiff on December 3, 2004, were in response to Plaintiff's conduct and behavior on that day. Thus, if Plaintiff's admission to the facility occurred close in time to the use of physical restraints by the staff, the circumstances surrounding Plaintiff's admission to the Lincoln Trail could potentially be relevant to the issue of whether the medical staff and employees' care and treatment of Plaintiff was reasonable. However, if the Plaintiff was admitted prior to December 3, 2004, Plaintiff's conduct or behavior prior to his admission at Lincoln Trail would not be relevant to his claims. Because the record does not reflect the date on which the Plaintiff was admitted to Lincoln Trail, the Court is unable to decide this motion at this time.

22. The motion by Plaintiff to exclude sexually explicit drawings purportedly drawn by Plaintiff during a prior admission to Lincoln Trial in 2003 is **granted**. Defendant represents that it does not intend to introduce the pictures in question.

### VIII. Motion to Strike and Replace

In filing its responses to the Plaintiff's motions in limine, Defendant inadvertently uploaded a duplicate of a response for another pleading [DN 75]. Upon being notified by the Court, Defendant immediately filed a motion to strike and replace the response. The motion to strike and replace [DN 78] is **granted**. The Clerk shall file the response tendered with the motion. The Court considered this response in deciding the motions in limine.

cc: counsel of record